IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOMAS CUMMINS, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 3:13-00645 |
| | ) Judge Haynes |
| v. | ) ) |
| PROMETHEAN, INC., | ) ) |
| Defendant. | ) |

**M E M O R A N D U M**

Plaintiff, Thomas Cummins, filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. against the Defendant Promethean, Inc., his former employer. Plaintiff asserts claims for retaliation and discrimination based upon his depression.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 16) contending, in sum, that Plaintiff's proof does not satisfy a prima facie showing of retaliation under Title VII nor a disability discrimination under the ADA. Plaintiff submits his proof on both claims are sufficient and material factual disputes exist to deny summary judgment.

For the reasons set forth below, the Court concludes that Plaintiff's proof is insufficient to support judgment on his Title VII and ADA claims and the Defendant's motion for summary judgment should be granted.

## A. Findings of Fact[1]

Promethean, which sells interactive whiteboards and other technological devices to schools, employed Plaintiff in 2008 as an Area Sales Manager. (Docket Entry No. 25, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶¶ 4 and 5). In November 2011, Promethean placed Plaintiff and five other area sales managers on yearly sales quotas for their respective assigned areas. Id. at ¶ 6. Plaintiff's sales territory included Tennessee, Kentucky, West Virginia and Arkansas. Id. at ¶ 5. Promethean also employs "Teacher Learning Constants," or "TLCs" who train clients with Promethean's products to maximize their use of Promethean products in the schools. Id. at ¶¶ 10-11. TLCs also have a geographic territory. Id. at ¶ 12. In 2009, Promethean added "Urban Account Specialists" employees who focused on specific accounts, as opposed to territory. Id. at ¶ 13.

On April 30, 2009, Plaintiff had a conflict with Lawrence Love, an urban account specialist about Love's presentation to a number of school principals in Memphis. Id. at ¶¶ 16-17. On the morning of the presentation, Love telephoned Plaintiff to inform him that "he's in Memphis sitting there with a roomful of principals, wondering where my board is." Id. at ¶ 18. Plaintiff told Love that he failed to clarify the exact date of this presentation. Id. During the conversation, Love, an African-American, told Plaintiff, a Caucasian, that "this was a black thing

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that under the applicable law, there are not any material factual disputes. Thus, this section constitutes finding of facts.

and [Plaintiff] was doing this on purpose." Id. at ¶ 19.

Plaintiff considered Love's comment an accusation that Plaintiff was a racist and Plaintiff wrote Scott Willett and Rob Goldberg, his supervisors that: "I don't necessarily want to escalate this, but I did want you to be aware in case there is an escalation from his side." Id. at ¶ 21. Plaintiff described his email as an effort to get "some feedback." Id. at ¶ 22. According to Plaintiff, Goldberg made light of the incident at annual sales meetings, id. at ¶ 26, and Willett sent him an email containing a video clip in which Goldberg says "Lawrence Love thinks you're a racist. Ha, ha, ha, ha." Id. at ¶ 27. Plaintiff's co-workers told Plaintiff that they knew he was not a racist. Id. at ¶ 29.

In June 2010, Annie Kwan, Defendant's human resources official, informed Plaintiff that a female employee of Promethean's reseller, Personal Computer Systems, alleged that Plaintiff made inappropriate sexual comments to her as well as another female. Id. at ¶¶ 32-34. Plaintiff was accused of referring to females as "fine" and "hot" and Plaintiff stated to one of the females at a trade show that, "we could have made a beautiful life together" and "sit in my lap." Id. at ¶ 35. Promethean required Plaintiff to write a letter of apology, but Plaintiff asserts that he was only being sarcastic and flirtatious. Id. at ¶¶ 32, 36.

By 2010, Promethean's business conditions worsened as a result of "an overall decline in education spending," and the economy "was obviously in the middle of some pretty big issues." Id. at ¶ 51. The Defendant sent employees letters about a reorganization of its business model and a need "to fundamentally change how we approach the market, rethink our product and service offerings, and how we support and service our customer base." Id. at ¶ 52.

For 2011, Plaintiff's quota was $5 million in sales and, in his August 9, 2011

performance review, Willet informed Plaintiff that he was "tracking a little behind the annual number at the midway point." Id. at ¶55. By November 3, 2011, Plaintiff's sales of two million five hundred thirty-nine thousand five hundred ninety-seven dollars ($2,539,597) were just over 50 percent of his annual quota. Id. at ¶ 60. Plaintiff received a Performance Improvement Plan, ("PIP") that required two million four hundred sixty thousand four hundred three dollars ($2,460,403) in bookings by the fourth quarter. Id. at ¶ 62. The Defendant also required Plaintiff to prepare a "Report weekly to detail all customer contact from previous week, including site meeting, phone calls, seminars and conferences," with the first such report being due on November 7, 2012, as well as a monthly report "with a brief description of current projects." Id. at ¶ 63. On November 15, 2011, Plaintiff had not provided Willett his weekly reports. Id. at ¶ 67. Plaintiff's failure to do so continued for his remaining time with Defendant. Id. at ¶ 68. By November 2011, six area sales managers who failed to meet their annual quota, were placed on a PIP, including Plaintiff. Id. at ¶ 56.

On November 29, 2011, Plaintiff sent a letter to Kwan, Willett and Goldberg disputing his PIP. Id. at ¶¶ 70-71. Plaintiff also raised the 2009 Love incident and the 2010 sexual harassment complaints against him. Id. at ¶ 71. Plaintiff requested a "re-opening of the Sexual Harassment case" and a request to file "a charge of Racism or Reverse Racism against Love. Id. at ¶ 75. Plaintiff also disclosed his depression and explained that he was uncomfortable working with "the main contacts at 3 of my largest Enterprise Accounts," who "are all gay men." Id. at ¶ 72, 74. Plaintiff also requested an account of his vacation time or time for his short-term disability." Id. at ¶ 75.

On December 1, 2011, Kwan responded that Promethean would consider Plaintiff for a

short term disability:

> First and foremost, we are concerned about your health. Your e-mail is Promethean's first notification of your diagnosis of depression. Promethean will do all that we can to provide you any assistance within our benefits guidelines. If your doctor recommends that you go on short term disability (STD) please contact me so that I can direct you through the application process. You will be required to submit a written doctor's recommendation in order to be approved for STD.

Id. at ¶ 76. As to Love, who had since left Promethean, Kwan invited Plaintiff to provide details of any racial discrimination against him for investigation. Id. at ¶ 77. Kwan also requested the identities of the cited gay business partners or contacts. Id. Kwan informed Plaintiff that for the sexual harassment complaint, she would "be happy to review this new evidence" and "review the evidence to determine if this new information requires re-opening the matter." Id. Kwan also provided Plaintiff his leave balance and FMLA leave. Id. Plaintiff did not request any accommodation for his cited depression nor provide any additional information about the 2010 sexual harassment charge against him or about the 2009 events with Love. Id. at ¶¶ 78-80. Plaintiff did not identify any gay persons to whom he referred. Id. at ¶ 81. Plaintiff provides his explanations why he failed to do, but the facts are that he did not provide any such information.

By January 2012, Defendant terminated 25 employees in its Reduction in Force ("RIF") plan. Id. at ¶ 82. Plaintiff was subject to the RIF because he was not responsive on his weekly reports nor had Plaintiff met his year-end quota. Id. at ¶¶ 85-86. By July 2012, none of the managers who had received PIPs were employed by Promethean. Id. at ¶ 89.

### B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee

5

Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986); <u>accord</u>, <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

Celotex, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989); but see Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must

7

'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the

8

> evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

<u>Liberty Lobby</u>, 477 U.S. at 248 (citation omitted and emphasis added).

It is likewise true that:

> "In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . .'"

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d. 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." <u>Webster's Third New</u>

InterNational Dictionary (1986).

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1.  Complex cases are not necessarily inappropriate for summary judgment.
>
> 2.  Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3.  The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.
>
> 4.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5.  A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must

prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 1. Title VII

For his retaliation claim, Plaintiff must present evidence (1) that he engaged in protected activity under Title VII; (2) that the Defendant knew Plaintiff had exercised those rights; (3) that the Defendant then took an adverse employment action against the Plaintiff; and (4) that a causal connection exists between Plaintiff's protected activity and the adverse employment action. Morris v. Oldham Cty. Fiscal Ct., 201 F.3d 784, 792 (6th Cir. 2000).

As to Plaintiff's protected activity, the only identifiable activity by Plaintiff is his November 16, 2011 letter to Kwan, Defendant's human resources official, about the Love incident, the sexual harassment charges against him, and his comments on his distaste of business with allegedly gay men. Under Willoughby v. Allstate Ins. Co., 104 Fed. Appx. 528, 529-31 (6th Cir. 2004), the Court concludes this letter does not constitute protected activity. Assuming the letter so qualifies, the Court does not find Plaintiff's proof of the 2009 and 2010 incidents to bear any causal relationship to the Defendant's business decision, in 2012, to implement a RIF due to lost business that included termination of several area managers, including Plaintiff.

In any event, assuming "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its action," Canitia v. Yellow Freight Sys. Inc., 903 F.2d 1064, 1066 (6th Cir. 1990), the Court concludes that the Defendant's proof on Plaintiff's job performance standards satisfies this burden and Plaintiff lacks any proof of pretext. Thus, the Court concludes that the Defendant's termination of Plaintiff was not retaliatory. Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996).

### 2. The ADA

The ADA was enacted to counterbalance society's historic tendency to isolate and segregate individuals with disabilities. 42 U.S.C. § 12101. The ADA ensures that individuals living with disabilities are treated fairly and afforded equal opportunity within the workplace, among other areas. Id. Thus, the ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

For a claim of discrimination under the ADA, Plaintiff must prove that: (1) he is an individual with a disability; (2) he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) he was either denied a reasonable accommodation for his disability or he suffered an adverse employment action solely because of his disability. Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997). The term "qualified individual" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "The definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under this Act." Verhoff v. Time Warner Cable, Inc. 299 Fed. Appx. 488, 494 (6th Cir. 2008) (citing Pub. L. No. 110-325, § 4(4)(A)). Under the ADA, an individual's disability must be determined on a case-by-case basis. Sebest v. Campbell City School Dist. Bd. of Educ., 94 Fed. Appx. 320, 326-27 (6th Cir. 2004).

An individual is disabled under the ADA if: (1) he has a physical or mental impairment that substantially limits one or more of his major life activities; (2) he has a record of such impairment; or (3) he is regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life

activities include but are not limited to functions such as "caring for oneself, performing manual tasks, seeing . . . walking, standing . . . learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). An impairment that "substantially limits" one major life activity need not limit other major life activities in order to be consider a disability. 42 U.S.C. § 12101(4)(c). However, "[i]f [an employee's] condition does not meet one of these categories even if he was terminated because of some medical condition, he is not disabled within the meaning of the Act. The ADA is not a general protection for medically afflicted persons." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008) (citation omitted).

As applied here, Plaintiff's alleged depression was first raised at or about the time of his poor job performance. For the reasons stated earlier, the Court concludes Defendant had more than ample legitimate reasons to terminate Plaintiff and, thus, Plaintiff's proof cannot meet the "but for" causation standard for his ADA claim, namely that but for his depression, he would not have been terminated. Lewis v. Humbolt Acquisition Corp., Inc., 681 F.3d 312, 321 (6th Cir. 2012) (en banc).

### 3. Conclusion

For these reasons, the Court concludes that the Defendant's motion for summary judgment should be granted.

An appropriate Order is filed herewith.

ENTERED this the ___6th___ day of November, 2014.

WILLIAM J. HAYNES, JR.,
United States District Judge