# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: June 05, 2015

Mr. Andy L. Allman
Law Offices
103 Bluegrass Commons Boulevard
Hendersonville, TN 37075

Mr. Jonathan O. Harris
Ogletree Deakins
401 Commerce Street
Suite 1200
Nashville, TN 37219

Re: Case No. 14-6480, *Thomas Cummins v. Promethean, Inc.*
Originating Case No. : 3:13-cv-00645

Dear Counsel,

  The Court issued the enclosed Opinion today in this case.

Sincerely yours,

s/Linda M. Niesen
Case Manager
Direct Dial No. 513-564-7038

cc: Mr. Keith Throckmorton

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0407n.06

Case No. 14-6480

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| THOMAS CUMMINS, | ) | **FILED** Jun 05, 2015 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) |  |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| PROMETHEAN, INC., | ) ) |  |
| Defendant-Appellee. | ) ) ) | OPINION |

BEFORE: SUTTON, GRIFFIN, and WHITE, Circuit Judges.

SUTTON, Circuit Judge. In 2009, Thomas Lane Cummins, who is white, had a racially tinged spat with a coworker, who is black. Three years later, Promethean, Inc., fired Cummins as part of a companywide reduction in force. Cummins alleges that Promethean fired him because he reported the spat or alternatively because he suffered from depression. We affirm the district court's summary judgment ruling that each claim fails as a matter of law.

Promethean sells interactive whiteboards to schools across the country. In 2008, it hired Cummins as an area sales manager for territory that included Tennessee. Area sales managers work with "urban account specialists" and area-specific "teacher learning consultants" to sell and

Case No. 14-6480
*Cummins v. Promethean, Inc.*

help schools use Promethean's whiteboards. R. 36 at 2. Promethean requires each of its managers to reach annual sales quotas.

In 2009, Cummins had a dispute with Lawrence Love, an urban account specialist. The two men planned to attend a sales presentation together but miscommunicated about the date. On April 30, Love called Cummins, angrily informing him that he was "in Memphis, sitting there with a roomful of principals" wondering where Cummins was. R. 25 at 5. Love accused Cummins of abandoning him "on purpose" and that "this was a black thing," a comment Cummins interpreted as an accusation that he was racist. *Id.*

Cummins emailed his supervisor, Scott Willett, to recount what had happened and solicit feedback. "I don't necessarily want to escalate this," Cummins wrote, "but I did want you to be aware in case there is an escalation from his side." *Id.* at 6. The purpose of his message, he later acknowledged, was to "CYA," i.e., to cover his keister and diffuse responsibility in case Love alleged discrimination. *Id.*; *see* William Safire, *On Language; Glossary of a Scandal*, N.Y. Times, Aug. 16, 1987 (discussing the origins of the acronym). He also wanted Willett to make sure something like that "never happened again." R. 25 at 6.

Nothing ever did. Instead, after the prospect of escalation died down, Cummins' supervisors made light of the incident. In October, for example, Willett sent Cummins a video of another supervisor chuckling at a bowling alley, "Lawrence Love thinks you're a racist!" *Id.* at 9. Although Cummins did not find this funny, the other supervisor apparently thought it amusing that anyone would suspect Cummins of racism.

Over the next two years, Promethean's business—and Cummins performance—declined. In November 2011, Cummins and five other area regional managers received "performance

2

Case No. 14-6480
*Cummins v. Promethean, Inc.*

improvement plans" that placed their jobs at risk if they did not meet their sales quotas by year's end. R. 19-12 at 1–11. To monitor their progress, the plans also required some managers to "[r]eport weekly to detail all customer contact from [the] previous week." *Id.* Cummins "knew what his numbers were, so [he] was not surprised to get the [plan]." Appellant Br. 22. But Cummins considered the plan unrealistic, and he was "not very good" at submitting his weekly reports on time. R. 25 at 22–23.

Cummins also felt that the Lawrence Love incident had caused a "snowball effect" that was hurting his sales. R. 25 at 15–16. On November 29, he aired his grievances in an email to several supervisors. Among other complaints, Cummins expressed concern over "a lack of support within my territory" due to Love's accusation of racism and how it was "handled." R. 19-15 at 1–2. Cummins also disclosed that he was suffering from depression and requested an account of his vacation time for short-term disability. A human resources representative followed up with Cummins on December 1, inviting him to provide details of any way he believed Promethean had discriminated against him because of his race and promising to provide him with "any assistance within our benefits guidelines" for his disability. R. 25 at 24–25. Cummins never replied to this letter, as he apparently planned to talk with the representative in January.

On January 9, 2012, Promethean fired twenty-five employees, including Cummins and two other area sales managers, as part of a companywide reduction in force. Willett explained that he had to fire one area sales manager under his supervision and he selected Cummins over another candidate, James Hewett, because Hewett "was all over" providing weekly reports while Cummins was unresponsive to the company's request to do the same. Nevertheless, Promethean eventually fired all six of the managers on improvement plans, including Hewett, in 2012.

3

Case No. 14-6480
*Cummins v. Promethean, Inc.*

In June 2013, Cummins sued Promethean, alleging retaliation in violation of the Civil Rights Act of 1964 and discrimination in violation of the Americans with Disabilities Act of 1990. The district court granted summary judgment to Promethean on the grounds that Cummins never engaged in activity protected by the Civil Rights Act, and he could not demonstrate that he was fired due to retaliation or his disability. Cummins appealed, challenging both rulings.

*Race discrimination.* Title VII of the Civil Rights Act prohibits employers from discriminating against any employee "because he has opposed any practice made an unlawful employment practice" by the Act. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* claim under this clause, Cummins must show that (1) he engaged in activity protected by Title VII; (2) Promethean knew that he had engaged in the activity; (3) he was subjected to an adverse employment action; and (4) the adverse action would not have occurred "but for" the protected activity. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013); *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000). In addition, because Cummins was fired as part of a companywide reduction in force, his evidentiary burden of proving individual discrimination is "heightened": He must show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [him out] for discharge for impermissible reasons." *Geiger v. Tower Auto.*, 579 F.3d 614, 623–24 (6th Cir. 2009) (quoting *Brune & Ashing v. Basf Corp.,* 234 F.3d 1267 (6th Cir. 2000)) (internal quotation marks omitted).

Cummins cannot satisfy these requirements. He claims that he was harassed and set on a path toward losing his job as a result of his April 30, 2009, email recounting his dispute with Lawrence Love. But the email was not activity protected by Title VII. As this court has repeatedly held, the Civil Rights Act protects employees subjected to discrimination or who

4

Case No. 14-6480
*Cummins v. Promethean, Inc.*

oppose discrimination—not those who are simply *accused* of discriminating. *Willoughby v. Allstate Ins. Co.*, 104 F. App'x 528, 530–31 (6th Cir. 2004); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989). Taking all inferences in Cummins's favor—as we must on summary judgment—nothing in his April 2009 email hints that he was opposing racial discrimination. After describing Love's accusation that he missed their meeting because of "a black thing," Cummins wrote, "I don't necessarily want to escalate this, but I did want you to be aware in case there was an escalation from his side. I can say that I have never been more insulted, infuriated, and disappointed all in one setting." R. 19-5 at 1–2. Although Cummins was assuredly angry about the incident, the email does not imply that he believed Love's accusation constituted racial discrimination. To the contrary, he admits he sent the letter to cover his backside in case Love alleged racial discrimination against *him*. R. 25 at 6. "Not once does [Cummins] suggest in the statement that [he] was being harassed, discriminated against, or retaliated against based on any protected characteristic, such as [his] race." *Samuels v. Corr. Med. Servs., Inc.*, 591 F. App'x 475, 485 (6th Cir. 2015).

The only time Cummins let on that he believed he had been subjected to racial discrimination was in his November 2011 email accusing Love of "reverse racism" and complaining about how the situation had been "handled." R. 19-15 at 1–3. But Cummins sent this email after he had been placed on an improvement plan that threatened to fire him if he did not meet his 2011 sales quota. As the district court correctly ruled, even if Cummins genuinely believed that his email was opposing racial discrimination, he would still need to prove that "but for" the email, he would not have been fired along with every other manager who received an improvement plan. R. 36 at 12. The only evidence Cummins has offered to satisfy this hurdle is the two-month proximity between his email and his firing—a period that alone "do[es] not

5

Case No. 14-6480
*Cummins v. Promethean, Inc.*

establish a *prima facie* case of retaliatory discharge," *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1273 (6th Cir. 1986), especially in light of the "heightened standard" that accompanies a companywide reduction in force, *see Geiger*, 579 F.3d at 623.

 *Disability discrimination.* The same absence of causation defeats Cummins' claim under the Americans with Disabilities Act. That Act also prohibits adverse employment actions against qualified individuals that would not have occurred "but for" their protected conduct or status. 42 U.S.C. §§ 12112(a), (b)(1), 12203(a); *see Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc). The first time Cummins informed any of his supervisors that he had a disability was in his November 2011 email disclosing that he suffered from depression. In light of the improvement plan Cummins was already on at the time, the two months separating his disclosure from the reduction in force does not alone give rise to an inference of discrimination, *see Frieder v. Morehead State Univ.*, 770 F.3d 428, 431 (6th Cir. 2014); *Geiger*, 579 F.3d at 623, and Cummins offers no additional evidence of disability discrimination.

 For these reasons, we affirm.